## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

JASMINE BRUNSON                    *

Plaintiff                          *

v                                  *          Civil Action No. GLR-11-2987

MCAC / CORIZEN                     *

Defendant                          *
                                  ***

## MEMORANDUM OPINION

Pending is defendant's unopposed motion to dismiss or for summary judgment.  ECF No. 11.  Plaintiff was advised of his right to file an opposition to defendant's motion and of the consequences of failing to do so.[1]  ECF No. 13.  He has not, however, opposed the motion.  For the reasons that follow, defendant's motion, construed as a motion for summary judgment, shall be granted.

### Background

In his complaint dated October 14, 2011, plaintiff, who was at all times relevant to this case incarcerated at Maryland Correctional Adjustment Center, states that since June 24, 2011, his face, hands, feet, tongue and "several other parts" of his body have been swelling up to three times their normal size.  He further claims he has been breaking out in hives of different shapes and sizes on numerous occasions.  Plaintiff states he was seen by medical staff "over ten times" for this problem and was provided with three different medications that did not resolve the problem.   In addition, he states he has been hospitalized twice where he was prescribed medication, but it was not provided to him.  ECF No. 1 at p. 3.  As relief plaintiff seeks compensation for pain and suffering as well as an order requiring medical treatment.  *Id.*

---

[1] Although mail sent to plaintiff at the address provided was returned as undeliverable (ECF No. 12), the notice regarding the pending dispositive motion was not returned (ECF No. 13).

**Standard of Review**

Rule 56(a) of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotations omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173

(1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) *citing Wilson v. Seiter*, 501 U.S.294, 297 (1991).   In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care).   Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839– 40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997).   "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), *quoting Farmer,* 511 U.S. at 844.   If the requisite subjective knowledge is established, an official may avoid liability  "if [he] responded reasonably to the risk, even if the harm was not

ultimately averted." *Farmer*, 511 U.S. at 844.   Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time.  *Brown* 240 F. 3d at 390; *citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

Defendant submits the unrefuted affidavit of Dr. Michael Lawrence, together with medical records, in support of its position that plaintiff received constitutionally adequate medical care.   ECF No. 11 at Ex. A and B.   Those records indicate that plaintiff was first evaluated on June 23, 2011 for a complaint that the right side of his lower lip was swollen.   At that time he stated the problem began three hours before the visit.   Plaintiff was given Benadryl, an antihistamine used to treat allergic reactions.   On the following day, Dr. Lawrence examined plaintiff, who denied he had sustained any trauma to his lip or ingested any new foods or medications.   Dr. Lawrence further noted that although plaintiff's lip was still swollen he was not having any difficulties breathing.   Plaintiff was given another dose of Benadryl and prescribed a five day course of Benadryl to be taken twice a day.   Plaintiff did not report to the medical department on June 25, 2011, to receive the two doses of Benadryl he was prescribed.  *Id*. at Ex. A, ¶ 3.

On June 26, 2011, plaintiff was seen for complaints of swelling to his face and lip.   He complained that he had not received his Benadryl for the day, but it was noted he had failed to come to the medical department earlier that day (8:00 a.m.) for his dose of Benadryl.   Plaintiff claimed he did not know he was supposed to come to the medical department to receive his medication and he was administered his morning dose of Benadryl at approximately 2:30 p.m., and subsequently failed to return for his evening dose.   Additionally, medication administration

records for plaintiff indicate he failed to come to the medical department on June 27, 2011, to receive either of his doses of Benadryl. *Id*. at Ex. A, ¶ 4.

On June 30, and July 1, 2011, plaintiff requested testing to determine why his hand, lip, tongue, face, finger, feet, and other parts of his body were continuing to swell. Dr. Lawrence again evaluated plaintiff on July 1, 2011, for complaints of itching of the swollen areas as well as transient itching and edema of other parts of his body. At that time Dr. Lawrence noted edema of the back of plaintiff's right hand, but no swelling of his lips, tongue, or gums. Plaintiff offered that he thought an insect bite was possibly the cause of the swelling and denied other possible causes such as trauma or use of new soaps. Dr. Lawrence prescribed a prednisone taper as well as Benadryl as needed for one month. Defendant explains that when a medication is prescribed "prn" it must be requested and is not given routinely. *Id*. at Ex. A, ¶ 5.

On July 6, 2011, plaintiff was again evaluated for swelling of his foot, hand, lip, tongue, face, and chin. Plaintiff exhibited localized swelling on the back of his left arm and his chin, but showed no signs of infection or distress. On July 13, 2011, Dr. Lawrence again evaluated plaintiff's swollen upper lip and plaintiff again denied eating new foods, using new soaps, or taking new medications. In addition, plaintiff did not exhibit signs of shortness of breath and, aside from the swelling of his upper lip, his physical evaluation was normal. Plaintiff's prescriptions for prednisone and Benadryl were extended for another four days and a third medication, Zantac, was added. Defendant notes that Zantac is normally prescribed for gastro-intestinal issues, but it is also useful in treating allergic reactions. In addition, Dr. Lawrence ordered a Radioallergosorbent test (RAST) profile, to screen plaintiff for allergies to specific substances. *Id*. at Ex. A, ¶ 6.

On July 26, 2011, Dr. Zerabruck Tewelde evaluated plaintiff and noted a large reddened patch on plaintiff's left forearm.  Plaintiff told Dr. Tewelde that the affected area first began to itch and then became red after he scratched it.  Dr. Tewelde encouraged plaintiff to pay attention for things that may be causing him to suffer an allergic reaction and to continue taking his medications.  The results of plaintiff's RAST profile showed that his IgE antibody levels were very high, indicating some type of allergy, but he was not found to be allergic to the specific grasses, trees, and weeds that were tested.  *Id.* at Ex. A, ¶ 7.

On August 5, 2011, Dr. Lawrence evaluated plaintiff, for complaints of intermittent swelling of his lips, face, and eyes. Plaintiff said that he had not changed his soap or detergent and that he had not eaten any new foods or taken any new medications and denied any shortness of breath or swelling of his tongue. Dr. Lawrence's examination revealed plaintiff had mild edema of the left side of his face and left upper eyelid, but no warmth or redness. Dr. Lawrence ordered additional blood tests and submitted a Consultation Request form for plaintiff to see a dermatologist.

On August 22, 2011, Dr. Lawrence evaluated plaintiff again for swelling and itching of his lips and hands. Dr. Lawrence again prescribed a prednisone taper, along with Benadryl and Zantac, and noted that the dermatology consultation was approved.  Plaintiff refused his prednisone taper from August 25 through August 30, 2011, and on September 1, 2 and 5, 2011. Plaintiff's swelling had resolved by September 2, 2011, but his skin was still itchy. *Id.* at Ex. A, ¶ 9.

On September 13, 2011, Dr. Erekosima, a dermatologist at the Johns Hopkins Hospital, evaluated plaintiff.  Plaintiff described his episodes of itching and swelling to Dr. Erekosima, but denied that his throat swelled or that he had any difficulties breathing. Plaintiff also told Dr.

Erekosima that during a prednisone taper, his symptoms would recur when his dose was at 20 mg per day. Plaintiff also said that Benadryl helped his symptoms if taken every day. Dr. Erekosima's diagnosis was chronic idiopathic urticaria (hives) and angioedema, and recommended Benadryl at bedtime, and Zyrtec, a different type of antihistamine, in the morning. *Id*. at Ex. A, ¶ 10.

On September 28, 2011, a dermatologist at the University of Maryland Medical Center evaluated plaintiff and also diagnosed chronic idiopathic urticarial, recommending as treatment Claritin (another type of antihistamine), Zantac, and Atarax, an antihistamine that also helps to control anxiety. *Id*. at Ex. A, ¶ 11.

Plaintiff continued to complain of welts, swelling, and itching and on October 12, 2011, was seen by Dr. Lawrence for his complaints of urticaria as well as pruritus of his arms, torso, and face.  Dr. Lawrence renewed plaintiff's prescriptions for Zyrtec, Benadryl, and Zantac. On October 26, 2011, plaintiff submitted a Sick Call Request Form, stating that his medications were not helping his symptoms. On October 31, 2011, plaintiff told Dr. Lawrence that he had been suffering from a swollen lip and red bumps on his arms for three days, but denied any difficulties breathing. Dr. Lawrence discussed the warning signs of a life-threatening allergic reaction with plaintiff.  Dr. Lawrence also ordered additional testing for plaintiff to determine whether he may be allergic to certain types of food. The allergy tests were performed on November 9, 2011, and did not indicate that plaintiff was allergic to any of the tested food items. *Id*. at Ex. A, ¶ 12.

On November 11, 2011, Dr. Lawrence again saw plaintiff for complaints of swelling of his lips and the area around his mouth. At that time it was noted that plaintiff's tongue was not swollen. Plaintiff told Dr. Lawrence that he had taken chlorpheniramine, but that it did not help

his symptoms. Plaintiff also told Dr. Lawrence that he had eaten peanuts and a hamburger the prior evening. Dr. Lawrence, therefore, ordered additional food allergy tests for plaintiff, to include testing specifically for peanuts, hamburgers, and other related food items. *Id*. at Ex. A, ¶ 13.

Plaintiff's allergy tests were performed on November 16, 2011 and the results indicated plaintiff is allergic to wheat, beef, cheese, onions, and rice.  On November 28, 2011, plaintiff's diet was changed to eliminate those foods and he was further advised to keep a food diary. Despite advice to the contrary, plaintiff continued to eat some of the prohibited foods, and continued to experience symptoms of an allergic reaction. *Id*. at Ex. A, ¶ 14.

On December 1, 2011, Dr. Getnet Luka met with plaintiff and discussed his food allergy test results with him extensively. Plaintiff told Dr. Luka that he had eaten the prohibited foods the day before without experiencing an allergic reaction. Plaintiff also said that he had eaten the prohibited foods before his incarceration without suffering an allergic reaction. Based on the information plaintiff provided, Dr. Luka told plaintiff that his medical and food history does not suggest that he is allergic to the prohibited foods.  Dr. Luka, therefore, advised plaintiff to keep a food journal and to immediately report any swelling to the medical staff.  Dr. Luka also noted that there was no need for plaintiff to be under any food restrictions. At the time of Dr. Luka's evaluation, plaintiff was only taking Zantac. Dr. Luka noted that he would discuss additional allergy tests for plaintiff with Dr. Lawrence.  *Id*. at Ex. A, ¶ 15.

Plaintiff continued to complain of allergic reactions and, on December 19, 2011, he was put back on a restricted diet to eliminate the foods that previous tests indicated may cause his allergic reactions. Exhibit A, ¶ 16.  On January 25, 2012, plaintiff was admitted to the Infirmary

in the Metropolitan Transition Center for observation for an apparent allergic reaction to an unknown item. Further allergy tests were negative.

Plaintiff told Dr. Tadessa Tedla that he had no problems while taking Zyrtec. Plaintiff was discharged back to MCAC on January 27, 2012, with a recommendation for Zyrtec and to have an Epi-pen in the clinic in case of a severe allergic reaction with airway obstruction. Exhibit A, ¶ 17.   Until his transfer from MCAC on or about February 21, 2012, plaintiff continued to receive Zyrtec and to be monitored and treated for his complaints of swelling.  *Id*. at Ex. A, ¶ 18.

The undisputed record establishes that plaintiff received appropriate medical care that included multiple tests, referral to specialists, and medications to address his complaints.  The fact that a definitive explanation for the cause of his symptoms could not be provided immediately does not mean a constitutional violation has occurred.  Indeed, the record evidence in this case establishes that best efforts were made to address plaintiff's concerns on multiple occasions.  Thus, it is clear defendant is entitled to summary judgment in its favor.  A separate Order follows.


June 25, 2012                                                  _____/s/_____
Date                                                          George Levi Russell, III
                                                              United States District Judge